**HUFF CONTRACTING, Appellant,**

v.

**Jimmy SARK; Hon. Vonell C. Tingle, Arbitrator; Hon. Donna H. Terry, Chief Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 1999–CA–000803–WC.**

Court of Appeals of Kentucky.

Feb. 11, 2000.

J. Logan Griffith, Paintsville, for Appellant.

Jeffrey D. Hensley, Flatwoods, for Appellees, Jimmy Sark.

Before: BARBER, HUDDLESTON and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

Huff Contracting appeals a decision of the Workers' Compensation Board that set aside a portion of its settlement with Jimmy Sark which provided that Sark had waived payment of future medical expenses. The Board's decision was a reversal of a decision by the Chief Administrative Law Judge (CALJ) that had overruled Sark's motion to set aside the settlement agreement for lack of consideration, or in the alternative, to reopen his claim based on mistake, fraud, or constructive fraud. Since we agree with the Board that there was not substantial evidence to support the finding by the CALJ that there was consideration for Sark's waiver of future medical benefits, we affirm.

While Sark was working for Huff on October 23, 1996, he sustained a bilateral knee injury. Sark's counsel, Jeffrey D. Hensley, communicated with an adjuster for Huff's workers' compensation carrier, Dina Green, regarding a potential settlement of Sark's claim. After some correspondence, the two parties agreed to settle the claim based on a 3% impairment rating. On June 6, 1998, Green sent a proposed settlement agreement to Hensley, with an attached letter which included the following statement:

> I did include all the future medical expenses since this is a subrogation claim, I have to wrap up these expenses or we can't settle with the third party.

The tendered settlement agreement contained the following relevant language:

> A lump sum settlement of 3%, discounted at 6%. Total to be paid by employer is $2,685.20. Employer has already paid medicals totalling $10[,]868.53 and TTD 3–11–97 to 7–23–97 totalling $4,034.05. *This settlement is inclusive of all attorney fees and also includes all future medical expenses beyond that already paid of $10,868.53. The employee retains his right to pursue any third party action.* This agreement is full and final settlement for the injury arising on 10–23–96 [emphasis added].

The agreement, which was signed by Sark, Hensley, and Green, was approved by an Arbitrator on July 1, 1998. On October 14, 1998, another Arbitrator denied a motion by Sark to set aside the settlement agreement or in the alternative to reopen his claim based on mistake, fraud, and/or constructive fraud. On October 28, 1998, Sark filed a request for a *de novo* review of the October 14, 1998, order. On December 14, 1998, the CALJ dismissed the matter finding no evidence of mistake or fraud, and further finding that Sark knowingly waived future medical benefits as the waiver was plainly set forth in the terms of the agreement. While the CALJ noted Huff's argument that Sark had pursued a "third party action which was settled for $52,000.00 and that the subrogation recovery was taken in consideration for waiver of future medical expenses," the CALJ failed to make any specific finding as to whether there was

any consideration given by the employer and its insurance carrier for Sark's waiver of payment of his potential future medical expenses.

Sark appealed to the Board which reversed the CALJ.[1] The Board found that there was no evidence of any consideration having been paid by the employer or insurance carrier in return for Sark's waiver of future medical benefits. The Board stated:

> The difficulty we have with the settlement in the instant action is that there is no evidence of any consideration being paid. Even the cover letter accompanying the settlement sets out only a benefit to the employer, the need to wrap up the entire case because it is a subrogation matter, and no benefit to the employee. There is no evidence of any additional payment being made for medicals in the waiver. The payment of in excess of $10,000.00 in medical expenses prior to the settlement establishes that significant medical treatment had been offered. Further, there is no evidence that the claim itself was at risk for complete dismissal, there being no allegations of it being an injury unrelated to work, a question concerning causation, notice or statute of limitations. An agreement without consideration must be looked upon with disfavor. The payment of medical benefits to an injured worker pursuant to KRS 342.020 is an intended benefit to that injured worker. See *Commonwealth of Kentucky, Department of Highways v. Porter*, Ky., 469 S.W.2d 350 (1971). In order for a waiver of medicals to be effective, consideration for that waiver must be direct on the fact [sic] of the settlement and may not simply be implied from some other activity. The waiver of any right under the Kentucky Workers' Compensation Act in a settlement document must meet this standard. Here, there

simply is none. While we do not believe that it is appropriate to set aside the entirety of the settlement agreement, we do believe that the agreement as a matter of law must be modified by order of an Administrative Law Judge deleting that portion of the settlement relating to the waiver of future medical expenses.

> In addressing the matters before us, it must be clearly understood that the sole basis for modification of this settlement agreement is a failure of consideration.

This appeal followed.

■ Huff argues that the Board erred in reversing the CALJ since it claims there was consideration for the waiver of future medical benefits:

> [Sark] had a third-party action which was settled for $52,000.00. [Huff] was subrogated to the third-party action. That subrogation recovery was to be taken in consideration for future medicals, thus the statement in the settlement agreement that: "The employee retains the right to pursue any third-party action."

Thus, it is Huff's position that since it gave up its right to pursue a portion of its subrogation claim, that Sark benefitted from its actions because he could obtain more money from his settlement of the third-party civil action.

Sark, while admitting that he did not read the settlement agreement before signing it, argues that there was no consideration for his waiver of future medical benefits, and thus that the agreement is not valid:

> ... [Huff is] either in error or attempting to mislead this court in [its] assertions that [it] gave up its right to pursue the remainder of its subrogation claims against the third party. [Huff] did in fact intervene and pursue [its] subroga-

---

1. Sark admitted in his brief to the Board that he failed to properly review the agreement and thus did not see the language relating to a waiver of his future medical benefits. The Board agreed with the CALJ that the agreement could not be set aside on the grounds of mistake.

tion rights in [Sark's] civil case. [Huff] also recovered almost [the] entire amounts [sic] of money paid out to [Sark]....

■ The purpose of review by this Court "is to correct the Board only where the the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."[2] The determination as to whether there was consideration for the waiver of future medical benefits constitutes an issue of fact to be found by the CALJ. Our role on appeal is to determine whether the Board erred in its assessment that there was not substantial evidence of consideration to support the CALJ's decision.

We agree with the Board that the record does not contain substantial evidence to support the CALJ's factual finding that consideration had been given for the waiver of future medical benefits. We cannot find in the June 6, 1998, letter, nor in the July 1, 1998, settlement agreement any consideration that Sark received for waiving his future medical benefits. It is clear to us that Huff received some benefit from Sark's having waived his future medical benefits; however, it is equally clear that Sark did not receive any consideration, for having given up his right to payment of future medical expenses under KRS 342.020.

■ As in general contract law, consideration is also necessary to create a binding contract in this context.[3]

[T]he term "consideration" is thus defined:

"A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit,' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise."[4]

For Sark to have forfeited his right to future medical benefits under KRS 342.020, he had to receive some consideration from Huff. "Clearly, the forbearance of a right to sue is valid consideration to support a promise."[5] If Huff had in fact given up a right to pursue a portion of its subrogation claim, then perhaps there would have been valid consideration. Sark may very well have benefitted from such a waiver of this potential subrogation recovery because the third party then would not have had to pay this additional amount and Sark perhaps could have increased the amount of the settlement of his civil action against the third party. However, Sark specifically denies that Huff "gave up its right to pursue the remainder of its subrogation claims against the third party." Thus, the CALJ was presented with a factual determination as to this claimed consideration, and we agree with the Board that there was not substantial evidence of record to support a finding of consideration. Accordingly, the decision of the Workers' Compensation Board is affirmed.

ALL CONCUR.

2. *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–688 (1992).

3. *Cuppy v. General Accident Fire & Life Assurance Corp.,* Ky., 378 S.W.2d 629, 632 (1964); and *Liberty Mutual Insurance Co. v. Martinez,* 407 S.W.2d 272, 275 (Tex.App.1966).

4. *Phillips v. Phillips,* 294 Ky. 323, 335, 171 S.W.2d 458, 464 (1943)(quoting *Luigart v. Federal Parquatry Manufacturing Co.,* 194 Ky. 213, 238 S.W. 758, 760 (1922)).

5. *Alvey v. Union Investment, Inc.,* Ky.App., 697 S.W.2d 145, 148 (1985)(citing *Cooke v. Louisville Trust Co.,* Ky., 380 S.W.2d 255 (1964)). *See also B. Frank Joy Co. v. Isaac,* 333 Md. 628, 636 A.2d 1016, 1023 (1994).